## SILICA PRODUCTS CO. v. HAYDITE CO. et al.

### No. 4311.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1930.

The appeal is from a decree dismissing appellant's bill, which charges infringement of certain claims of United States patent to Olsen, No. 1,314,752, September 2, 1919, for "burned shale and method of preparing the

same, and concrete made therefrom." Application filed May 22, 1918.

The claims of which infringement is charged are:

The purposes of the invention, as stated in the application, are:

"My invention relates to a new material having a very large variety of uses. In its chief use it may be classified as a building and construction material. Another important use is as a refining or purifying material.

"An object of the invention is to provide a relatively light chemically inert, porous material useful in the refining of sugar or oil.

"Another object of the invention is to provide a light, inert material highly resistant to stresses to take the place of the usual sand and crushed rock in concrete.

"Another object of the invention is to provide a concrete having a high elastic limit or coefficient of elasticity, and a high ultimate compressive strength.

"The invention possesses other features of advantage, some of which, with the foregoing, will be set forth in the following description of the preferred form of my invention."

The disclosure of the specifications respecting the treatment of the shale is:

"In the practice of my invention I take shale rock which has preferably been decomposed by the action of the elements and burn it in a kiln or otherwise subject it to a temperature of 2000 degrees Fahrenheit or above for a period determined by the nature of the rock, so that all organic matter therein is destroyed and it is reduced to a light porous, hard material. * * *

"After burning the shale, the resultant pieces are crushed and graded. The very fine material is a superior refining agent in the refining of sugar and oil, and for this purpose displaces the commonly used fuller's earth. The larger pieces of the material I substitute for crushed rock in the preparation of concrete, the finer particles being substituted for sand in the mixture."

The further description has reference to the mixture of this aggregate with other ingredients for making concrete, and extolling the virtues of concrete employing this aggregate instead of sand and rock.

The patentee died a very short time after the patent was granted, and the patent lay dormant for about six years, when it was assigned to appellant, which brought this action against appellees, who manufacture from shale rock an aggregate very similar, if not identical, in its properties to that of the alleged teachings of the Olsen patent.

The alleged dominating features of both products are the lightness of this aggregate over crushed rock and sand of the ordinary practice, with the resultant lightness of concrete made therefrom, as well as its fireproof and elastic qualities.

Appellees are licensees under a prior patent to Hayde, No. 1,255,878, February 12, 1918, application filed July 3, 1917, under which it is contended their product is made, and that if the Olsen patent be considered to cover appellees' product, the Hayde patent anticipates Olsen. It is further contended that, regardless of the scope of this Hayde patent, the evidence shows Hayde, and not Olsen, to have been the earlier maker of such aggregate, and of concrete in which it is used, and by substantially the same process as Olsen's. The earlier Hayde application would, upon its face, give Hayde priority if the pat-

ents were for the same thing. Hayde's patent purports to be for a "process of making brick and similar articles," and the specification is devoted to a description of the process. The patent states:

"The basic raw material employed in making brick or analogous articles in accordance with my invention is argillaceous or clayey in character, and is a material which will harden or form a clinker when subjected to a high temperature during the burning step of the process."

It says that the basic raw argillaceous material may be clay, shale, shale rock, or like material, having gravel, sand, or other substances ordinarily detrimental to the use of argillaceous material for brick making; and the process of burning it, and the result, is thus described:

"The raw material is next burned in a rotary or other type of kiln at a high temperature and for a comparatively short time. This burning temperature should be in excess of 1500° Fahrenheit, a temperature of from 1700° to 2200° Fahrenheit having been found suitable in the case of most raw argillaceous materials thus far employed in carrying out my process; and the said high temperature is maintained for a period of about two hours, as this treatment has been found to be the best suited for most raw materials. During this operation the material or the argillaceous constituent thereof is converted into hard dense particles and clinkers, and it assumes such a state that it will withstand the action of the elements without disintegration, and it becomes a resistant material not liable to change when the brick or other articles of which it forms the base and principal part are built into a permanent structure. The high temperature to which the material is heated eliminates all silt therefrom, and the resulting burned material consists of indurated clay, inert material not changed by the high temperature to which the raw material is subjected, and lime to the extent that lime producing material is or may be present in the raw material employed, all of which depend upon the characteristics and composition of the original material, as will be appreciated."

There is pointed out with much detail the process of cooling the substance, crushing it, treating it with water to slake the lime therein, mixing it with other ingredients, and then molding it into brick or other articles. It is pointed out that whereas in ordinary brickmaking the molded bricks are fired at moderate temperature for about five days, and then at much higher temperature for about the same time to burn them, under the process of the patent "the only heating necessary is that to which the basic composition or raw material is subjected during the burning step of the process, and which is ordinarily completed in about two hours." The advantage in articles thus made is stated to be that they are "well adapted to resist and withstand the action of heat, as well also as the disintegrating action of water applied to them when they are in a heated condition, as commonly happens in a fire; and it has been found in practice that they are but slightly affected by the action of heat and water at such times, and do not pop, crack, craze or disintegrate to any considerable extent under the above mentioned and similar adverse treatments or circumstances."

Thomas E. Scofield and Raymond E. Watson, both of Kansas City, Mo., and Timothy J. Scofield, of Chicago, Ill., for appellant.

Henry M. Huxley, of Chicago, Ill., and Wendell H. Cloud and Arthur C. Brown, both of Kansas City, Mo., for appellees.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

██ We refer thus fully to this Hayde patent to indicate its scope, and what was in fact claimed for it, and to preface the statement that nowhere in Hayde's specification or claims is there reference to an expanded or porous product, or one which would result in a materially lighter aggregate for concrete than the ordinary gravel, sand, and crushed rock aggregate.

In the Patent Office this Hayde patent, earlier than Olsen in application and grant, was cited against Olsen; whereupon Olsen amended certain of his claims to emphasize that the burning of his process did not produce the product of "hard dense particles and clinkers," as stated in the Hayde specification, and in his claims 1, 3, and 5 Olsen substituted the words "burned but not clinkered," and in claim 2 "burning without clinkering"; and as thus amended his claims were allowed.

When Hayde sought a reissue, and undertook to make claims for an expanded cellular aggregate, such claims were denied him on the ground that he had not originally described any such article.

But it is contended that before the Olsen invention Hayde had reduced to practice a process substantially like that of the Olsen patent, and had made a concrete aggregate and a concrete substantially like that described and claimed in Olsen's patent.

Olsen and Hayde had been long acquainted, and had had some business relations. Both had been working in the art of making concrete. As far back as October, 1905, Hayde had secured patent No. 803,285, for "fire and water proofing composition," of which coarse and powdered burned clay were constituent parts of a concrete product. It seems that some time afterward Olsen proposed getting a license under this patent, for the making of telephone poles and the like.

The evidence justifies the conclusion that for several years prior to the application for his first above patent Hayde was actively experimenting for the production of a light-weight aggregate as a constituent of molded brick and other concrete articles. In the early stages of the World War there was discussion and investigation respecting the feasibility of employing concrete in building ships and barges, and it was evident that a light weight concrete, otherwise adaptable, might be of much value for such use. It was abundantly shown that at least as far back as early 1917 Hayde had submitted samples of various such products from burned shale to laboratories for testing, and that the tests showed the aggregate, as well as the concrete made from it, to be expanded and porous and about 30 per cent. lighter than concrete aggregates ordinarily were.

The commercial aggregate put out by the Hayde interests was called "Haydite," and while it was asserted to be made under Hayde patent, No. 1,255,878, it was put out under the claim that it possessed, inter alia, the virtue of lightness. Early in 1918 it was submitted to the Bureau of Standards at Washington, and in some of the reports of the Bureau of about that time it was stated that "Haydite" was one of the products submitted for "tests of various aggregates to produce a light strong concrete." In a Bureau sheet of May, 1918, it was said:

"In order to produce a concrete that weighed considerably less than concrete as ordinarily made tests have been made of a large variety of aggregates, including * * * Haydite, a shale or clay clinker."

Various other of the Bureau reports showed Haydite to be much lighter than ordinary concrete aggregates and products.

On this subject the District Court said:

"The evidence shows that Stephen J. Hayde in 1915 had a burned, light-weight, expanded material which he sent from California to his nephew George Hayde in Kansas City. The letter to his nephew concerning the material directs special attention to the light-weight characteristic of the burned material. The evidence further shows that from March to September, 1917, Hayde submitted samples of burned aggregate to the Kansas City Laboratory for testing. Four of the nineteen samples submitted were of such exceptional lightness that Dr. Cross, the chemist in charge of the laboratory, noted the fact on the test sheet, though he says Mr. Hayde did not seem particularly interested in the fact and had requested no tests for weight. Dr. Cross, who is now a stockholder in the complainant's company, states, however, that there is no doubt but that Hayde 'had a light-weight aggregate.' The foregoing evidence, together with the tests made on Hayde's material by the United States Shipping Board, the material introduced in evidence which was sent to Prof. Duff A. Abrams for testing in the laboratory at Lewis Institute during April and May, 1917, and the mass of evidence which may be taken as highly corroborative, to the effect that Hayde had been experimenting constantly for several years prior to 1918 to perfect a method of producing a satisfactory light-weight aggregate, burned from clay and shale, often with excellent results, shows conclusively to my mind that Hayde had conceived and produced a light-weight aggregate such as Olsen claims it before Olsen conceived or produced it."

We are in accord with this view of the court, notwithstanding the strange fact that in the application for patent No. 1,255,878 Hayde made no reference whatever to a product materially lighter than concrete aggregates theretofore ordinarily in use.

The question here is the status of the Olsen patent and appellees' alleged infringement of it. The court found that Olsen's invention did not antedate his application, which was filed May 22, 1918. In this we must concur. The fact that Olsen died so soon after his patent issued may be deplorable, but does not raise unusual or extraordinary presumptions in favor of an earlier date. Practically all that is relied upon to carry back his invention date is the fact that on a laboratory test sheet of his material dated May 29, 1918, there is a notation in Olsen's handwriting that the sample covered by

the sheet had been in salt water for fourteen months. This is merely a declaration by Olsen in his own interest and cannot serve to carry back his invention date unless there is corroboration of the truth of what is noted. Of this there is no corroboration whatever. It must be remembered that these occurrences were at a time when there was public demand for a light, strong, and tough concrete for shipbuilding, and there would be strong incentive on the part of inventors working in this field to date their discoveries far enough back to anticipate others. While this incentive or interest was present with Hayde not less than with Olsen, it happens that in Hayde's case there is strong corroboration, which in Olsen seems to be wholly absent.

As to the process employed by appellees, it is contended that it is materially different from that of the Olsen patent. The court found that in several respects this was true. The process or method pointed out in the Olsen patent is decidedly meager, but it must not for that reason be accorded application broader or more inclusive than if it were more definitely indicated.

All that is revealed by Olsen on the important subject of burning the rock is that he subjects it "to a temperature of 2000 degrees Fahrenheit or above for a period determined by the nature of the rock, so that all organic matter therein is destroyed and it is reduced to a light porous, hard material"; whereas, the evidence shows that in appellees' process the crushed shale enters the kiln at 600 degrees, remaining at that temperature for a considerable time until it has passed along about thirty feet of the kiln, and when about ten feet from the discharging end it is subjected to a high temperature for a very short time. When a process patent discloses that the temperature and the time of exposure thereto is an important and distinguishing element of the process, a departure therefrom will, in general, be a departure from the process of the patent.

Claims 4, 6, 10, and 11 have no reference to the manner of burning the shale, and from them it could not remotely be deduced that a porous light-weight aggregate, or a process for making it, or a concrete incorporating it, is the subject-matter of those claims. For any limitation appearing therein to the contrary, the material, product, and process referred to may be substantially the same as in both of Hayde's earlier patents, if, indeed, not disclosed by other earlier patents, such as No. 930,801, August, 1909, to Senn and Kluger, and British patent No. 4,834 of 1882 to Paterson and Scott.

We are of opinion that claims 4, 6, 10, and 11 are not valid, and we agree with the District Court that the evidence does not show that appellees infringed claims 1, 2, 3, and 5.

The decree of the District Court is affirmed.